1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

ALEX GRABOWSKI, an individual, on behalf of himself, and on behalf of all persons similarly situated,

CASE NO. 10cv1658-WQH-MDD

ORDER

13

Plaintiff,

vs.

14

C.H. ROBINSON COMPANY; C.H. ROBINSON WORLDWIDE, INC.,

15
16

Defendants.

HAYES, Judge:

17
18
19
20
21

The matters before the Court are (1) the Motion for an Order Directing Arbitration and Dismissing, or in the Alternative, Staying the Action ("Motion for an Order Directing Arbitration"), filed by Defendants (ECF No. 34); and (2) the Request for Full Discovery and a Jury Trial as to Disputed Issues of Fact in Motion to Compel Arbitration ("Request for Full Discovery and a Jury Trial"), filed by Plaintiff (ECF No. 43-1).

22

## I.    Background

23
24

On August 9, 2010, Plaintiff initiated this action by filing a Complaint in this Court. (ECF No. 1).

25
26
27
28

On November 30, 2010, Plaintiff filed the Third Amended Complaint, which is the operative pleading.  (ECF No. 14).  Plaintiff, who was employed by Defendants as an "Account Manager," alleges that Defendants improperly classified him (and other individuals employed by Defendants in California) as an exempt employee from overtime wages, and

therefore failed to pay him overtime compensation although he "regularly worked more than eight (8) hours in a workday, forty (40) hours a workweek, and/or seven (7) consecutive days." *Id.* ¶ 4. Plaintiff alleges the following claims, on behalf of himself and all others similarly situated: (1) Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (2) Failure to Pay Overtime Compensation in Violation of California Labor Code §§ 510, 515.5, 551, 552, 1194 & 1198, *et seq.*; (3) Failure to Provide Accurate Itemized Statements in Violation of California Labor Code § 226; (4) Failure to Pay Overtime Compensation in Violation of 29 U.S.C. §§ 201, *et seq.*; and (5) Labor Code Private Attorney General Act, California Labor Code §§ 2698, *et seq.* Plaintiff alleges a class and collective action.

On May 19, 2011, Defendants filed the Motion for an Order Directing Arbitration. (ECF No. 34). Defendants move for an order directing the parties to arbitration pursuant to an agreement which Defendants contend requires Plaintiff to submit all employment-related disputes to binding arbitration, and requires the parties to arbitrate all disputes on an individual and not a class or collective basis.

On June 20, 2011, Plaintiff filed an opposition to the Motion for an Order Directing Arbitration, and a Request for Full Discovery and a Jury Trial. (ECF Nos. 43 & 43-1).

On June 27, 2011, Defendants filed a reply in support of the Motion for an Order Directing Arbitration, and an opposition to the Request for Full Discovery and a Jury Trial. (ECF Nos. 45 & 46).

On June 29, 2011 and July 5, 2011, Plaintiff filed a reply to Defendants' opposition to the Request for Full Discovery and a Jury Trial, and a response to the evidence submitted by Defendants in their reply in support of the Motion for an Order Directing Arbitration. (ECF Nos. 47 & 49).

On July 12, 2011, Defendants filed a reply to Plaintiff's response. (ECF No. 50).

On July 15, 2011, Plaintiff filed a Notice of Statement of Recent Authority Relevant to Defendants' Motion for an Order Directing Arbitration. (ECF No. 52).

On July 15, 2011, Defendants filed a Notice of Statement of Recent Authority Relevant to Defendants' Motion for an Order Directing Arbitration. (ECF No. 54).

On August 31, 2011, Plaintiff filed a second Notice of Statement of Recent Authority Relevant to Defendants' Motion for an Order Directing Arbitration. (ECF No. 55).

**II.    Facts**

Plaintiff began working for Defendants on October 1, 2007. (Arnold Decl. ¶ 2, ECF No. 34-2).

On December 13, 2007, Plaintiff met with his supervisor, Barry Cohen, for approximately ten minutes and discussed the Defendants' "Bonus Incentive Agreement." (Grabowski Dep. at 25, ECF No. 45-1). At the end of the meeting, Plaintiff and Cohen each signed the Bonus Incentive Agreement. (Turai Decl., Ex. C at 51, ECF No. 45-1). The Bonus Incentive Agreement provides that, "[i]n consideration for Your continued employment, Your eligibility for a bonus incentive, and the mutual promises set forth in this Agreement, You and the Company hereby agree" to the terms set forth in the Bonus Incentive Agreement. *Id.* at 47. The Bonus Incentive Agreement sets forth the terms of Plaintiff's compensation and eligibility for "a bonus based upon the annual Gross Net Earnings of the San Diego office." *Id*. The Bonus Incentive Agreement contains a "Dispute Resolution" provision which states:

> You and the Company agree that, except as provided below, all Claims the Company might bring against You and all claims You might bring against the Company and/or any of its officers, directors, or employees shall be deemed waived unless submitted to mediation, then, if mediation is unsuccessful, to final and binding arbitration in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association, modified as follows: (1) any mediation or arbitration shall be governed by the Company's Employment Dispute Mediation/Arbitration Procedure, which is available on the Company Intranet; (2) dispositive motions shall be permissible and not disfavored in any arbitration, and the standard for deciding such motions shall be the same as under Rule 56 of Federal Rules of Civil Procedure, and (3) except as mutually agreed at the time between You and the Company, neither You nor the Company may bring any Claim combined with or on behalf of any other person or entity, whether on a collective, representative, or class action basis or any other basis.

*Id*. The Dispute Resolution provision defines "Claims" to include: "all claims directly or indirectly related to Your recruitment, employment, compensation or benefits ... or termination of employment by the Company, including, but not limited to, alleged violations of ... the Fair Labor Standards Act..., and any and all claims under federal, state, local laws or regulations (including all such laws and regulations pertaining to employment or prohibiting

discrimination)." *Id.* at 48.  The Dispute Resolution Provision concludes with the following statements:

> YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT.  HOWEVER, YOU WILL NOT BE ELIGIBLE TO RECEIVE ANY BONUS PAYMENTS OR ADVANCES UNTIL THIS AGREEMENT IS SIGNED AND RETURNED BY YOU.  PLEASE READ THESE PROVISIONS CAREFULLY.  BY SIGNING BELOW, YOU ARE ATTESTING THAT YOU HAVE READ AND UNDERSTOOD THIS DOCUMENT, AND ARE KNOWINGLY AND VOLUNTARILY AGREEING TO ITS TERMS.

The Effective Date of this Agreement is January 01, 2008.

*Id.*

On December 17, 2008, Plaintiff and Cohen each signed a second Bonus Incentive Agreement, which contained the same terms as the December 13, 2007 Bonus Incentive Agreement, except it provided that "[t]he Effective Date of this Agreement is January 01, 2009." (Turai Decl., Ex. D at 54, ECF No. 45-1).

On December 21, 2009, Plaintiff and Cohen each signed a third Bonus Incentive Agreement, which contained the same terms as the prior two Bonus Incentive Agreements, except it provided that "[t]he Effective Date of this Agreement is January 01, 2010." (Turai Decl., Ex. E at 58, ECF No. 45-1).

In February of 2010, Plaintiff resigned from his employment with Defendants. (Grabowski Dep. at 18, ECF No. 45-1).

## III.   Contentions of the Parties

Defendants contend:

> The issue in this petition is simple: plaintiff ... repeatedly entered into a clear and unambiguous agreement with his former employer to arbitrate all claims arising out of his employment on an individual basis.  Notwithstanding this agreement, plaintiff brought a class and collective action alleging five employment-related causes of action in the United States District Court for the Southern District of California.  Defendants ... did not move to compel arbitration at the outset of the litigation because plaintiff's agreement to arbitrate was unenforceable under then-current California law.

> On April 27, 2011, the United States Supreme Court overturned the entire landscape of existing California law pertaining to arbitration agreements when it issued its decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011)....

> In light of *AT&T*, the Court must now enforce plaintiff's previously

unenforceable agreement requiring plaintiff to arbitrate any claims relating to his employment on an individual, and not a class, basis. Accordingly, Defendants seek an order compelling plaintiff's claims to arbitration and dismissing the action, or in the alternative, staying the instant proceedings until the arbitration is completed. Because the arbitration provisions executed by plaintiff are valid and enforceable agreements, this petition should be granted in its entirety.

(ECF No. 34-1 at 2).

Plaintiff contends:

Defendant's arbitration provision violates Section 7 of the National Labor Relations Act by denying employees the right to bring collective, class or representative actions. The arbitration provision is also unlawful and constitutes a criminal misdemeanor under California Labor Code Section 206.5 because Plaintiff was required to sign the agreement and release his right to bring a collective, class or representative action in order to avoid forfeiture of earned wages. The arbitration agreement is also unenforceable because it was signed under duress because Plaintiff was required to sign it to avoid forfeiture of earned bonus wages. The arbitration provision is unconscionable under Cal. Civil Code § 1670.5. *Concepcion v. AT&T Mobility LLC*, __U.S.__,131 S. Ct. 1740 (2011) is inapplicable to the facts of this case and Defendants have waived any right to seek arbitration by litigating this action in Court for 9 months before bringing this motion. For all these reasons, Defendant's motion to compel must be denied.

(ECF No. 43 at 10 (citations omitted)).

## IV. Discussion

### A. Waiver

Plaintiff contends that Defendants have "waived the right to seek to compel arbitration."

(ECF No. 43 at 36).

In determining whether arbitration has been waived pursuant to California law, a court may consider the following factors:

(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9th Cir. 2008) (quoting *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1196 (2003)). The waiver inquiry "must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements."

*Id.* at 1125 (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). "Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." *Fisher*, 791 F.2d at 694 (quotation omitted); *see also Sobremonte v. Superior Court*, 61 Cal. App. 4th 980, 991 (1998) ("Since arbitration is a strongly favored means of resolving disputes, courts must closely scrutinize any claims of waiver. A party claiming that the right to arbitrate has been waived has a heavy burden of proof.") (quotation omitted).

The Court of Appeals for the Ninth Circuit has held that a party does not act inconsistently with the right to arbitrate by failing to seek to enforce an arbitration agreement that would be unenforceable under then-existing law. *See Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) ("It is undisputed that defendants did not seek arbitration until after the close of discovery, nine months after their answer was filed.... [T]here could be no waiver here because there was no existing right to arbitration.... Defendants actively pursued their right to arbitrate as soon as they believed, in good faith, that they had such a right."); *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 697 (9th Cir. 1986) ("Until the Supreme Court's decision in *Byrd*, the arbitration agreement in this case was unenforceable. Therefore, the Fishers have failed to demonstrate that Becker acted inconsistently with a known existing right to compel arbitration."). In this case, Defendants reasonably could have believed that, prior to *AT&T Mobility, LLC v. Concepcion*, --- U.S. ---, 131 S. Ct. 1740 (2011), California courts would have found the arbitration agreement to be unenforceable, particularly with regard to Plaintiff's claims pursuant to California's Private Attorney General Act, as discussed below. Less than a month after *Conception* was decided, Defendants filed the Motion for an Order Directing Arbitration. Accordingly, Plaintiff has failed to show that Defendants acted inconsistently with a known right to arbitrate. *See Fisher*, 791 F.2d at 697.

The eight-month delay between Defendants' initial Answer and the Motion for an Order Directing Arbitration is less than the three-year delay in *Fisher* and the nine-month delay in *Letizia*. No dispositive motions have been filed, no motion for class certification has been

filed, and no trial date has been set.  The Court finds that the second and third waiver factors (i.e., "whether the litigation machinery has been substantially invoked" and "whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay") do not favor a finding of waiver.  *Cox*, 533 F.3d at 1124 (quotation omitted).  Defendants did not file a counterclaim, and there is no showing that Defendants obtained discovery which would not have been available in arbitration.  *Cf. id.* (fourth and fifth waiver factors).  Plaintiff contends that he has been prejudiced because "[m]ore hundred of hours of legal work and research has been expended by Plaintiff's attorneys to litigate the action for the last eight months, including responding to Defendant's discovery, appearing for deposition, conducting multiple depositions, filing motions, working out Rule 26 reports and schedules, along with working out a schedule [for] class certification and performing all of the work necessary to move for class certification."  (ECF No. 43 at 39).  The Court finds that Plaintiff has failed to establish that "the delay [in moving to compel arbitration] affected, misled, or prejudiced" Plaintiff within the meaning of the relevant caselaw.  *Cox*, 533 F.3d at 1124; *cf. Fisher*, 791 F.2d at 698 ("[T]he [plaintiff]s make the surprising contention that they have been prejudiced because they 'willingly incurred the substantial expense involved in this litigation in order to benefit from a full jury trial.'  This wound was self-inflicted.  The [plaintiff]s were parties to an agreement making arbitration of disputes mandatory.  They violated that agreement by including their arbitrable claims in this action.  Any extra expense incurred as a result of the [plaintiffs]' deliberate choice of an improper forum, in contravention of their contract, cannot be charged to [defendant].").

After considering the relevant factors, the Court finds that Defendants have not waived the right to compel arbitration.

**B.     Federal Arbitration Act**

The Federal Arbitration Act ("FAA") "was enacted ... in response to widespread judicial hostility to arbitration agreements."  *Concepcion*, 131 S. Ct. at 1745 (citation omitted).  Section 2 of the FAA states: "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or

transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has described Section 2 "as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S. Ct. at 1745 (quotations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* at 1745-46 (citations omitted).

"The final phrase of § 2 ... permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 1746 (quotation omitted). "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* at 1747 (citation omitted). "But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or ... unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." *Id.* (citation omitted). "[A] court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what the state legislature cannot." *Id.* (quotation omitted).

"Because the FAA mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed, the FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (emphasis in original; quotation omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA states that "[i]f the making of the arbitration agreement ... be in issue, the [district] court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "[T]o put such matters in issue, it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends. If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) (citations omitted). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000).

In this case, it is undisputed that the parties' arbitration agreement encompasses the dispute at issue. Plaintiff contends that the arbitration provisions in the Bonus Incentive Agreements are not valid and enforceable for the following reasons: (1) "the arbitration provision violates Section 7 of the [National Labor Relations Act]"; (2) "the arbitration provision violates [California Labor Code] § 206.5"; (3) "the arbitration provision is unenforceable because it was obtained by duress"; and (4) "the arbitration provision is unconscionable under Cal. Civil Code § 1670.5." (ECF No. 43 at 10-11).

## C.    National Labor Relations Act

Plaintiff contends Section 7 of the National Labor Relations Act ("NLRA") is violated by the following provision in the Bonus Incentive Agreements: "except as mutually agreed at the time between You and the Company, neither you nor the Company may bring any Claims combined with or on behalf of any other person or entity whether on a collective, representative, or class action basis or any other basis." (Turai Decl., Ex. C at 47, ECF No. 45-1; *see also* Turai Decl., Ex. D at 54, ECF No. 45-1; Turai Decl., Ex. E at 58, ECF No. 45-1). Plaintiff contends: "In the context of statutory claims by an employee, the restriction prohibiting combined claims 'on a collective, representative, or class action basis or any other basis' impairs employee statutory rights and is therefore unlawful by conflicting with Section 7 of the ... NLRA ... which guarantees employees the right to engage in concerted activities for the purpose of mutual aid and protection." (ECF No. 43 at 17).

Section 7 of the NLRA provides that "[e]mployees shall have the right ... to engage in ... concerted activities for the purpose of collective bargaining or other mutual aid or protection...." 29 U.S.C. § 157.  Courts have "held that the 'mutual aid or protection' clause protects employees from retaliation by their employers when they seek to improve working conditions through resort to administrative and judicial forums, and that employees' appeals to legislators to protect their interests as employees are within the scope of this clause." *Eastex, Inc. v. Nat'l Labor Relations Bd.*, 437 U.S. 556, 565-66 (1978).

Plaintiff fails to cite any authority stating that the enforcement of an arbitration agreement prohibiting class actions violates the NLRA.  The only case cited by either party which addresses a contention similar to Plaintiff's in an analogous situation is *Slawienski v. Nephron Pharmaceutical Corp.*, No. 10cv460, 2010 WL 5186622 (N.D. Ga. Dec. 9, 2010). The court stated:

> The only objection plaintiff makes to the agreements concerns the class action waiver provision.  Plaintiff argues that this provision violates the National Labor Relations Act ... because it prohibits plaintiff and other employees from engaging in 'concerted action to advocate about the terms and conditions of their employment.'  Thus, although plaintiff consents to arbitration, she asks the Court to invalidate the class action waiver and permit a collective or class action arbitration.
>
> There is no legal authority to support plaintiff's position.  The relevant provisions of the NLRA, as well as the case law cited by plaintiff, deal solely with an employee's right to participate in union organizing activities.  That right is not implicated by the allegations in plaintiff's complaint.  Indeed, it is apparent from the face of the complaint that plaintiff and the other opt-ins are not advocating regarding the terms and conditions of their employment.  Rather, plaintiffs are pursuing FLSA claims in an attempt to collect allegedly unpaid overtime wages.

*Id.* at *2 (quotations omitted).

The Court finds this reasoning persuasive.  Plaintiff, who resigned from his employment with Defendants six months before filing suit, has failed to show that this suit implicates the "mutual aid or protection" clause, or that he suffered retaliation by Defendants.  The Court finds that the NLRA does not operate to invalidate or otherwise render unenforceable the arbitration provisions of the Bonus Incentive Agreements signed by Plaintiff.

### D.    California Labor Code § 206.5

Plaintiff contends: "The arbitration agreement in this case violates [California Labor

Code] § 206.5(a) because Plaintiff was required to release his right to bring collective class or representative actions ... in order to avoid forfeiture of earned wages....   California law therefore precludes enforcement of this unlawful arbitration agreement." (ECF No. 43 at 19).

Section 206.5 states:

> An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made.  A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee.  Violation of this section by the employer is a misdemeanor.

Cal. Labor Code § 206.5(a).  "Labor Code section 206.5 simply prohibits employers from coercing settlements by withholding wages concededly due.  In other words, wages are not considered 'due' and unreleasable under Labor Code section 206.5, unless they are required to be paid under Labor Code section 206.  When a bona fide dispute exists, the disputed amounts are not 'due'...." *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1587 (2009); *see also* Cal. Labor Code § 206(a) ("In case of a dispute over wages, the employer shall pay, without condition ... all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed.").

Each Bonus Incentive Agreement states that "[t]he Effective Date of this Agreement is" *after* the date Plaintiff signed the agreement.  At the time Plaintiff signed his first Bonus Incentive Agreement on December 13, 2007, he was provided a "Compensation Projection Summary," which showed Plaintiff's "Gross Net Bonus" and "Advance" bonus to be $0.00. (Turai Decl., Ex. C at 52, ECF No. 45-1).  This evidence is sufficient to demonstrate that each Bonus Incentive Agreement concerned Plaintiff's eligibility for future bonuses, rather than already-earned bonuses.

Plaintiff submits a declaration which states: "It was my understanding that signing the documents was a necessary step to receiving the bonuses I had earned over the prior year." (Grabowski Decl. ¶ 9, ECF No. 44).  Plaintiff does not explain the basis for his understanding that the Bonus Incentive Agreements related to *earned* bonuses.  Plaintiff does not submit evidence that Cohen or any representative of Defendants told him that the agreements related to earned bonuses.  Plaintiff testified in a deposition that Cohen "did not explicitly say that"

Plaintiff had to sign the agreement in order to receive past, earned bonus amounts. (Grabowski Dep. at 54, ECF No. 45-1).  Plaintiff testified that his "understanding [was] based on ... the tone of the meeting," and the fact that Cohen showed Plaintiff the company's financial results of the previous year and projections for the upcoming year, which formed the basis for the bonus amounts.  *Id.*  As discussed above, Plaintiff's understanding is contrary to the plain terms of the each agreement, which state that "the terms of this Agreement shall be effective from" January first through December thirty-first of the following year.  (Turai Decl., Ex. C at 47, ECF No. 45-1; *see also* Turai Decl., Ex. D at 54, ECF No. 45-1; Turai Decl., Ex. E at 58, ECF No. 45-1).  Even if Plaintiff's declaration and deposition were sufficient to create a genuine dispute as to whether the Bonus Incentive Agreements related to already-earned bonuses (as opposed to future bonuses), "[w]hen a bona fide dispute exists, the disputed amounts are not 'due'" within the meaning of California Labor Code § 206.5.  *Watkins*, 172 Cal. App. 4th at 1587.  Plaintiff's declaration is insufficient to warrant a trial on the issue of whether the Bonus Incentive Agreements violate California Labor Code § 206.5(a).

The Court finds that the Bonus Incentive Agreements do not violate California Labor Code § 206.5.

**E.    Duress**

Plaintiff contends that his "execution of the arbitration agreement was obtained as the result of duress and undue influence because he was required to sign the agreement in order to avoid a forfeiture of earned wages."  (ECF No. 43 at 19).  In support of this contention, Plaintiff relies upon an unpublished California Court of Appeals case which held that an arbitration agreement was unenforceable due to duress when the trial court found that the employer violated California Labor Code § 206.5.  *See Canales v. Perf. Team Triangle West*, 2003 WL 361242, at *2 (Cal. Ct. App. Feb. 20, 2003) ("The record thus contains ample evidence to support the trial court's determinations of duress.... Canales's declaration indicates that she was asked to sign the agreement well after she began her employment, and that appellants' improper threat to withhold her earned pay compelled her to execute the agreement, which she had no reasonable opportunity to examine or understand.") (citing, *inter alia*, Cal.

1 Labor Code § 206.5).

2      As discussed above, Plaintiff has failed to introduce sufficient evidence for a fact-finder

3 to conclude that Plaintiff was required to sign the Bonus Incentive Agreements in order to

4 avoid a forfeiture of "wages due" pursuant to California Labor Code § 206.5.  Accordingly,

5 Plaintiff has failed to show that the Bonus Incentive Agreements were obtained by duress or

6 undue influence.

7      **F.      Unconscionability**

8      Plaintiff contends that the arbitration provisions in the Bonus Incentive Agreements are

9 unconscionable.

10      "[I]n assessing whether an arbitration agreement or clause is enforceable, the Court

11 should apply ordinary state-law principles that govern the formation of contracts." *Davis v.*

12 *O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (quotation omitted).  Under

13 California law, a contractual clause is unenforceable if it is both procedurally and substantively

14 unconscionable.  *See id.* (citing, *inter alia*, *Armendariz v. Found. Health Psychcare Servs.,*

15 *Inc.*, 24 Cal. 4th 83, 114 (2000)).[1]  "Courts apply a sliding scale: 'the more substantively

16 oppressive the contract term, the less evidence of procedural unconscionability is required to

17 come to the conclusion that the term is unenforceable, and vice versa.'"  *Id.* (quoting

18 *Armendariz*, 24 Cal. 4th at 114).  "Still, 'both [must] be present in order for a court to exercise

19 its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'"

20 *Id.* at 1072-73 (quoting *Armendariz*, 24 Cal. 4th at 114).  "[T]he party opposing arbitration has

21 the burden of proving the arbitration provision is unconscionable." *Higgins v. Superior Court*,

22 140 Cal. App. 4th 1238, 1249 (2006) (quotation omitted).

23

24      [1]   Defendants contend that Plaintiff "improperly relies on *Armendariz* and other
California decisions that specifically address the unconscionability of arbitration agreements
25 as opposed to non-arbitration contracts.  Yet, judicially-created obstacles to enforcement of the
parties' arbitration agreement identified in *Armendariz* and numerous other California
26 decisions do not survive the Supreme Court's decision in *AT&T* [*Mobility v. Conception*]."
(ECF No. 45 at 11).  The Court does not find that *Conception* implicitly overruled all
27 California and Ninth Circuit cases applying California unconscionability law to employer-
employee arbitration agreements.  However, the Court finds that pre-*Conception* cases
28 applying California unconscionability law must be read in light of *Conception*, as discussed
below.

A court determination that "the arbitration agreement contains ... flawed provisions does not necessarily mean that the entire [arbitration agreement] is substantively unconscionable." *Davis*, 485 F.3d at 1084. The court next considers whether it is "possible to sever the [unconscionable] provision." *Id*. (citation omitted).

### 1.   Procedural Unconscionability

The "[p]rocedural unconscionability analysis focuses on 'oppression' or 'surprise.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). "'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice,' while '[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them.'" *Id*. (quoting *Flores*, 93 Cal. App. 4th at 853).

Plaintiff contends:

> According to the face of the agreement, there can be no dispute that the agreement is a procedurally unconscionable contract of adhesion presented to current employee by his employer on a take-it or leave-it basis.... Further, this agreement is even more procedurally unconscionable here because (1) earned bonus wages are being withheld until the agreement is signed, (2) the employee is told to sign the agreement by his boss, and (3) many of the rights waived by the agreement are not disclosed at the time the agreement is presented for signature.

(ECF No. 43 at 22).

Plaintiff has presented evidence that the agreements were presented on a "take it or leave" basis, with little or no option for the employee to negotiate. In light of the Supreme Court's decision in *Conception*, however, the Court does not find that the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability. *Cf. Conception*, 131 S. Ct. at 1750 (holding that California's "*Discover Bank* rule" is preempted by the FAA in part because "[t]he rule is limited to adhesion contracts, but the times in which consumer contracts were anything other than adhesive are long past").

As discussed above, the Court finds that Plaintiff has failed to adequately demonstrate that "*earned* bonus wages are being withheld until the agreement is signed." (ECF No. 43 at 22).

The arbitration provision was not hidden in the contract; it is the longest provision in the relatively short Bonus Incentive Agreement.  The Bonus Incentive Agreement signed on December 13, 2007 contains two pages of text, and the Bonus Incentive Agreements signed the following two years are each a single page.  However, there is no evidence that Plaintiff was provided with a copy of "the Company's Employment Dispute Mediation/Arbitration Procedure" at the time he was asked to sign the agreement.  (Turai Decl., Ex. C at 47, ECF No. 45-1).  According to the Bonus Incentive Agreement, the Company's Employment Dispute Mediation/Arbitration Procedure governs any mediation or arbitration pursuant to the agreement, and is "available on the Company Intranet."  *Id*.  By the time Plaintiff signed the second and third Bonus Incentive Agreements in December 2008 and December 2009, he would have had ample opportunity to review "the Company's Employment Dispute Mediation/Arbitration Procedure," but the failure of Defendants to supply Plaintiff with this document at the time he signed the agreements adds an element of surprise, and therefore procedural unconscionability.  *See Nagrampa*, 469 F.3d at 1280.

The Court finds that the arbitration agreement contains elements of procedural unconscionability, although the evidence of procedural unconscionability is not strong, in light of *Conception*.

### 2.    Substantive Unconscionability

"Substantive unconscionability relates to the effect of the contract or provision.  A lack of mutuality is relevant in analyzing this prong.  The term focuses on the terms of the agreement and whether those terms are so one-sided as to *shock the conscience*."  *Davis*, 485 F.3d at 1075 (quotation omitted) (emphasis in original).  "A determination of substantive unconscionability involves whether the terms of the contract are unduly harsh or oppressive."  *Id*. (quotation omitted).

Plaintiff contends that the arbitration agreement is substantively unconscionable because (a) "the agreement is not bilateral"; (b) "the rules of the agreement are drafted and subject to unilateral revision by Defendant"; (c) "the agreement invokes a distant venue in Minnesota"; (d) "the agreement calls for application of Minnesota law"; (e) "the agreement

- 15 -

unfairly limits discovery"; (f) "the agreement changes the burden of proof"; (g) "the agreement effectively imposes one-sided confidentiality"; (h) "the agreement imposes prohibitive arbitration expenses on employees"; and (i) "the agreement shifts liability for attorneys' fees." (ECF No. 43 at 24-33).

### a.   "Carve Out" Provision

Plaintiff contends: "The agreement to arbitrate is not bilateral or mutual because the Defendant has carved out the claims commonly brought by employers and reserved these claims for judicial resolution, whereas the claims commonly brought by employees are forced into arbitration."  (ECF No. 43 at 24-25).

The Bonus Incentive Agreement states:

> This Dispute Resolution Agreement shall not apply to any of the following: (1) Worker's Compensation claims; (2) claims related to unemployment insurance; and (3) any claims by the Company that includes a request for injunctive or equitable relief, including, without limitation, claims related to its enforcement of any restrictive covenants, non-competition obligations, non-solicitation obligations and/or confidential information provisions contained in any Company policy and/or employment agreement(s) entered into between You and the Company and/or any claims to protect the Company's trade secrets, confidential or proprietary information, trademarks, copyrights, patents, or other intellectual property.

(Turai Decl., Ex. C at 48, ECF No. 45-1).

"California law allows an employer to preserve a judicial remedy for itself if justified based upon a 'legitimate commercial need' or 'business reality.'"  *Davis*, 485 F.3d at 1080 (quoting, *inter alia*, *Armendariz*, 24 Cal. 4th at 117 ("[A] contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable")).  However, "the 'business realities' that create the special need for such an advantage [must be] explained in the contract itself, ... [or] it must be factually established."  *Armendariz*, 24 Cal. 4th at 117 (quotation omitted).  Absent such a showing, "[w]here the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress in either an arbitral or judicial forum, California courts have found a lack of mutuality supporting substantive unconscionability."  *Nagrampa*, 469 F.3d at 1286 (citing *Armendariz*, 24 Cal.4th at 119).

In light of *Nagrampa*, the Court finds that the "carve out" provision stating that the Dispute Resolution Agreement does not apply to "any claims by the Company that includes a request for injunctive or equitable relief" is substantively unconscionable under California law.  *See id*.; *see also Davis*, 485 F.3d at 1081 ("[T]he [dispute resolution provision]'s non-mutual exception allowing it a judicial remedy to protect confidential information, as written, is one-sided and thus substantively unconscionable.") (quotation omitted).

### b.  Unilateral Revision of Arbitration Rules

Plaintiff contends that the agreement is substantively unconscionable because "the agreement to arbitrate is controlled by rules created by the Defendant, which rules the Defendant can change or revise to Defendant's advantage." (ECF No. 43 at 27).  Plaintiff cites to *Ingle v. Circuit City Stores, Inc*, 328 F.3d 1165 (9th Cir. 2003), which "conclude[d] that [a] provision affording [the employer] the unilateral power to terminate or modify the contract is substantively unconscionable."  *Id*. at 1179.

Plaintiff does not cite to any provision in the Bonus Incentive Agreement or the Employment Dispute Mediation/Arbitration Procedure which permits Defendants to unilaterally modify change or revise the procedures.   The Employment Dispute Mediation/Arbitration Procedure contains a provision entitled, "Revision of Employment Dispute Arbitration Procedure," which states in its entirety: "The Parties to a Dispute for which the Employment Dispute Arbitration Procedure has been initiated may agree in writing to vary the Employment Dispute Arbitration Procedure at any time before the Arbitrator gives copies of the Award to both Parties."  (Arnold Decl., Ex. B at 43; ECF No. 34-2).

The Court finds that Plaintiff has failed to demonstrate that the arbitration agreement is substantively unconscionable because Defendants are permitted to unilaterally change the arbitration rules.

### c.  Minnesota Venue

Plaintiff contends: "[T]he venue of the arbitration proceeding is unfairly one-sided because the venue is Minnesota.  Minnesota is solely advantageous to Defendant, which maintains headquarters in Minnesota, and is unfair to Plaintiff who worked in California, has

1    claims under California law, and has no relationship with Minnesota."  (ECF No. 43 at 27).

2         The Employment Dispute Mediation/Arbitration Procedure provides that "[u]nless the
3    Parties otherwise agree or the Arbitrator otherwise directs for good reason, any hearing shall
4    be conducted and deemed held in [Hennepin County, Minnesota], at a place convenient to the
5    Parties as so designated by the Arbitrator."  (Arnold Decl., Ex. B at 40; ECF No. 34-2).  In the
6    briefing on the Motion to Compel, Defendants "agree that the arbitration hearing in the instant
7    matter should be held in San Diego, California."  (ECF No. 45 at 16).

8         The Court finds that the clear terms of the Employment Dispute Mediation/Arbitration
9    Procedure provide for a Minnesota venue only if the parties do not otherwise agree or the
10   arbitrator does not otherwise direct.  By filing suit in this Court, Plaintiff has effectively chosen
11   a San Diego venue, as has Defendants.  According to the terms of the Employment Dispute
12   Mediation/Arbitration Procedure, in this situation, the venue of any arbitration would be San
13   Diego, and not Minnesota.

14        The Court finds that Plaintiff has failed to demonstrate that the arbitration agreement
15   is substantively unconscionable because of the venue provision in the Employment Dispute
16   Mediation/Arbitration Procedure.

17                      **d.    Choice of Law**

18        Plaintiff contends: "The agreement unfairly deprives Plaintiff of the protections of
19   California law by making the governing law the 'law of the state of venue' which is
20   Minnesota."  (ECF No. 43 at 29).

21        The Employment Dispute Mediation/Arbitration Procedure contains a provision
22   entitled, "Applicable Law and Burden of Persuasion," which states: "The principles of
23   applicable substantive common, decisional and statutory law shall control the disposition of
24   each Dispute. Each Party bears the burden of persuasion on any claim or counterclaim raised
25   by that Party in accordance with the principles of applicable common, decisional and statutory
26   law." (Arnold Decl., Ex. B at 40; ECF No. 34-2).  The provision of the Employment Dispute
27   Mediation/Arbitration Procedure quoted by Plaintiff states: "Any proceeding pursuant to the
28   Employment Dispute Mediation/Arbitration Procedure is deemed to be an arbitration

1   proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, if applicable, to the

2   exclusion of any state law inconsistent therewith; or, if the FAA is not applicable, to the law

3   of the state of venue." *Id*. at 42.  As discussed above, the "state of venue" in this case would

4   be California.

5       The Court finds that Plaintiff has failed to demonstrate that the arbitration agreement

6   is substantively unconscionable because of the choice of law provision in the Employment

7   Dispute Mediation/Arbitration Procedure.

8                           **e.       Discovery**

9       Plaintiff contends: "[D]iscovery is unfairly limited by the Defendant's rules.  The

10  agreement and rules limit discovery to no written discovery and only one deposition.  Thus,

11  the agreement limits the amount of discovery from what would be available under the Fed.

12  Rules of Civil Procedure.  Moreover, the Defendant is only required to produce documents

13  which the Defendant deems relevant and material."  (ECF No. 43 at 30).

14      The Employment Dispute Mediation/Arbitration Procedure contains only one provision

15  related to discovery, which states:

16      Discovery shall be conducted in the most expeditious and cost-effective manner
        practicable, and shall be limited to that which is relevant and material to the
17      Dispute and for which each Party has a substantial, demonstrable need....

18      Upon request, the Employee shall be entitled, at least thirty (30) days in advance
        of the commencement of the hearing, to take *at least* one deposition of a[]
19      Company representative designated by the Employee....  Any disputes relative
        to discovery shall be presented to the Arbitrator for final and binding resolution.
20      The Arbitrator may grant, upon good cause shown, either Party's request for
        discovery in addition to or limiting that for which this paragraph expressly
21      provides.

22  (Arnold Decl., Ex. B at 40; ECF No. 34-2 (emphasis added)).  The discovery provision of the

23  Employment Dispute Mediation/Arbitration Procedure does not limit the employee to only one

24  deposition, and it names the Arbitrator as the decisionmaker on whether discovery should be

25  granted or denied.

26      The Court finds that Plaintiff has failed to demonstrate that the arbitration agreement

27  is substantively unconscionable because of the discovery provision in the Employment Dispute

28  Mediation/Arbitration Procedure.

1

### f.     Burden of Proof

2      Plaintiff contends that, "[u]nder California law and the Labor Code, the employee is

3  presumed to be non-exempt and the employer bears the burden of proving that the employee

4  was exempt," but "under the Defendant's rules, the burden of proof is unfairly switched to

5  Plaintiff to prove his claim in this action that he was misclassified as exempt under the

6  California Labor Code." (ECF No. 43 at 31-32).

7      As discussed above, the Employment Dispute Mediation/Arbitration Procedure contains

8  a provision entitled, "Applicable Law and Burden of Persuasion," which states: "The

9  principles of applicable substantive common, decisional and statutory law shall control the

10  disposition of each Dispute.  Each Party bears the burden of persuasion on any claim or

11  counterclaim raised by that Party in accordance with the principles of applicable common,

12  decisional and statutory law." (Arnold Decl., Ex. B at 40; ECF No. 34-2).  This provision

13  places the burden of persuasion "in accordance with the principles of applicable common,

14  decisional and statutory law." *Id*.

15      The Court finds that Plaintiff has failed to demonstrate that the arbitration agreement

16  is substantively unconscionable because of the burden of proof provision in the Employment

17  Dispute Mediation/Arbitration Procedure.

18

### g.     Confidentiality

19      Plaintiff contends: "[T]he Defendant's rules impose confidentiality which unfairly

20  favors Defendant.  While arbitration normally is not open to the public, the Defendant's rules

21  go much further.  Defendant's rules require that the record of the proceedings be confidential

22  under threat of a sanction order by the arbitrator." (ECF No. 43 at 32).

23      The Employment Dispute Mediation/Arbitration Procedure contains a provision

24  entitled, "Confidentiality," which states:

25       All aspects of the arbitration, including without limitation, the record of the
        proceeding, are confidential and shall not be open to the public, except (a) to the
26       extent both Parties agree otherwise in writing, (b) as may be appropriate in any
        subsequent proceedings by the Parties, or (c) as may otherwise be appropriate
27       in response to a governmental agency or legal process, provided that the Party
        upon whom such process is served shall give immediate notice of such process
28       to the other Party and afford the other Party an appropriate opportunity to object
        to such process.

1

2

> At the request of a Party or upon his or her initiative, the Arbitrator shall issue protective orders appropriate to the circumstances and shall enforce the confidentiality of the arbitration as set forth in this article.

3  (Arnold Decl., Ex. B at 41; ECF No. 34-2).

4          In *Davis*, the Court of Appeals for the Ninth Circuit stated that, under California law,

5  "[c]onfidentiality by itself is not substantively unconscionable," but the employer's

6  "confidentiality clause ... is written too broadly" and "unconscionably favors [the employer],"

7  when the clause at issue "would prevent an employee from contacting other employees to

8  assist in litigating (or arbitrating) an employee's case." *Davis*, 485 F.3d at 1078-79 ("The

9  clause precludes even mention to anyone 'not directly involved in the mediation or arbitration'

10  of 'the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration'

11  or even 'the existence of a controversy and the fact that there is a mediation or an arbitration

12  proceeding.'").  In this case, the confidentiality provision in the Employment Dispute

13  Mediation/Arbitration Procedure is broader than what the court in *Davis* indicated would be

14  conscionable.  *Cf. id.* at 1079 (noting that "[t]he parties to any particular arbitration, especially

15  in an employment dispute, can always agree to limit availability of sensitive employee

16  information (e.g., social security numbers or other personal identifier information) or other

17  issue-specific matters, if necessary").

18          The Court finds that the confidentiality provision in the arbitration agreement is

19  substantively unconscionable under California law.

20                                   **h.      Arbitration Expenses**

21          Plaintiff contends that "the agreement imposes prohibitive arbitration expenses on

22  employees."  (ECF No. 43 at 33).

23          The Employment Dispute Mediation/Arbitration Procedure contains an "Expenses"

24  provision which states:

25          Unless precluded by decisional or other law in the jurisdiction where venue lies
            for the Arbitration, the Employee shall bear a portion of the reasonable expenses

26          of the arbitration up to the lesser of (a) one-half of these expenses, or (b) an
            amount equal to two (2) days of the Employee's gross annual cash compensation

27          (including bonuses, commissions and related cash compensation) during the
            twelve (12) months immediately preceding the notice of claim initiating the

28          Employment Dispute Arbitration Procedure.  The Company shall bear the
            remainder of these expenses.

(Arnold Decl., Ex. B at 41; ECF No. 34-2).  Defendants submit undisputed evidence that Plaintiff earned approximately $130 a day when he resigned.  (Turai Decl., Ex. E at 59, ECF No. 45-1).  Accordingly, the Employment Dispute Mediation/Arbitration Procedure provides that, "[u]nless precluded by" California law, the maximum amount Plaintiff would have to pay in arbitration expenses is $260.  *Id.*  This amount is less than the $350 filing fee Plaintiff paid to initiate this judicial action.  (ECF No. 1).  Plaintiff presents no authority indicating that a requirement that an employee pay $260 in arbitration expenses is substantively unconscionable under California law.

The Court finds that Plaintiff has failed to demonstrate that the arbitration agreement is substantively unconscionable because of the expenses provision in the Employment Dispute Mediation/Arbitration Procedure.

### i.   Attorney's Fees

Plaintiff contends:

> The Defendant's rules provide for one-way awards of attorney's fees in favor of Defendant, which would not be available in a judicial proceeding. This is true because Plaintiff, as an employee, is statutorily entitled to attorneys' fees when prevailing on his misclassification claim, whereas Defendant is not permitted to recover attorneys' fees under California law....  Moreover, the award of attorneys' fees to the prevailing employee is relegated to the discretion of the arbitrator, whereas under Labor Code §1194, Plaintiff would have an absolute right to recover attorneys' fees. Thus, the unilateral right in favor of the Plaintiff has been abridged by the arbitration provision.

(ECF No. 43 at 33-34 (citations omitted)).

The Employment Dispute Mediation/Arbitration Procedure states:

> [T]he Arbitrator shall have the same power and authority as would a judge in a non-jury court trial to grant any relief that a court could grant, as may be in conformance with applicable principles of common, decisional and statutory law in the relevant jurisdiction.... The Award of any damages or relief is left to the discretion of the Arbitrator, in accordance with applicable law, and may be made in a bifurcated proceeding....

> The Arbitrator may award either Party its reasonable attorneys' fees and costs, including reasonable expenses associated with production of witnesses or proof, upon a finding that the claim or counterclaim was frivolous or brought to harass the Employee, the Company or the Company's personnel.

> The Arbitrator may award either Party its reasonable attorneys' fees and costs, including reasonable expenses associated with production of witnesses or proof, upon a finding that the other Party (a) engaged in unreasonable delay, (b) failed to cooperate in discovery, or (c) failed to comply with requirements of

1    confidentiality.

2    (Arnold Decl., Ex. B at 41-42; ECF No. 34-2).

3    Defendants concede that the arbitration agreement "potentially offers Defendants

4    attorneys fees for which they might not otherwise be eligible" under California law.  (ECF No.

5    45 at 17).  In light of this concession, the Court finds that the attorneys' fee provision in the

6    Employment Dispute Mediation/Arbitration Procedure is substantively unconscionable under

7    California law.  *Cf. Armendariz*, 24 Cal. 4th at 110-11 ("[W]e conclude that when an employer

8    imposes mandatory arbitration as a condition of employment, the arbitration agreement or

9    arbitration process cannot generally require the employee to bear any *type* of expense that the

10   employee would not be required to bear if he or she were free to bring the action in court.")

11   (emphasis in original).  However, the degree of unconscionability is low, given the ability of

12   a court to sanction a party in the amount of the opposing party's attorney's fees for frivolous,

13   harassing, or unreasonable filings.  *Cf.* 28 U.S.C. § 1927; Fed. R. Civ. P. 11.

### 3.   Severability

15   Defendants contend:

16   Once Plaintiff's fabrications are removed, what remains is an agreement that
     carves out some potential employer claims, imposes confidentiality on the
17   parties, and potentially offers Defendants attorneys fees for which they might
     not otherwise be eligible.  These terms fall far short of being so one-sided that
18   they 'shock the conscious' as required to invalidate the agreement.  Furthermore,
     the latter two terms can be easily severed from the agreement.
19
20   (ECF No. 45 at 17).  Plaintiff contends that "[t]he unconscionability so permeates that

21   agreement that severance is not an option."  (ECF No. 43 at 35).

22   A court determination that "the arbitration agreement contains ... flawed provisions does

     not necessarily mean that the entire [arbitration agreement] is substantively unconscionable."
23
     *Davis*, 485 F.3d at 1084.  The court next considers whether it is "possible to sever the
24
     [unconscionable] provision." *Id*. (citing Cal. Civ. Code § 1670.5(a) ("If the court as a matter
25
     of law finds the contract or any clause of the contract to have been unconscionable at the time
26
     it was made the court may refuse to enforce the contract, or it may enforce the remainder of
27
     the contract without the unconscionable clause, or it may so limit the application of any
28
     unconscionable clause as to avoid any unconscionable result.")).

In *Armendariz*, the California Supreme Court stated that "the statute [i.e., Cal. Civ. Code § 1670.5] appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement. But it also appears to contemplate the latter course only when an agreement is permeated by unconscionability." *Armendariz*, 24 Cal. 4th at 122. The court stated:

> Courts are to look to various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.

*Id.* at 124; *see also Davis*, 485 F.3d at 1084 ("The question is whether the offending clause or clauses are merely 'collateral' to the main purpose of the arbitration agreement, or whether the [entire arbitration agreement] is 'permeated' by unconscionability.") (quoting *Armendariz*, 24 Cal. 4th at 124). In *Davis*, the Court of Appeals for the Ninth Circuit decided that, while the arbitration agreement under consideration had a lesser degree of unconscionability as those considered in *Ingle* or in *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (2002), the agreement nonetheless could not be cured by severance when the agreement did not have a severability clause, was procedurally unconscionable, and contained four substantively unconscionable terms which "cannot be stricken or excised without gutting the agreement." *Id.*

In this case, unlike in *Davis*, the Bonus Incentive Agreement contains a severability clause. (Turai Decl., Ex. C at 48, ECF No. 45-1 ("If any portion of this dispute resolution provision is determined to be void or unenforceable, then the remaining portions of this Agreement shall continue in full force and effect, and this Agreement may be modified to the extent necessary, consistent with its fundamental purpose and intent, in order to make it enforceable.")). As discussed above, the arbitration agreement and the incorporated Employment Dispute Mediation/Arbitration Procedure have an element of procedural unconscionability and contain three substantively unconscionable provisions (the "carve out" provision stating that the Dispute Resolution Agreement does not apply to "any claims by the Company that includes a request for injunctive or equitable relief"; the confidentiality

provision; and the attorney's fees provision). Collectively, the three substantively unconscionable provisions in this case have a lower degree of unconscionability than the four substantively unconscionable provisions at issue in *Davis*. *Cf. Davis*, 485 F.3d at 1082 (holding that the four substantively unconscionable provisions included a "carve out" provision, a confidentiality provision, an "all-inclusive bar to administrative actions ... [which] is contrary to U.S. Supreme Court and California Supreme Court precedent," and a "notice provision" which functioned as "a substantively-unconscionable shortened statute of limitations"). The Court finds that, given "the liberal federal policy favoring arbitration," *Concepcion*, 131 S. Ct. at 1745, the three substantively unconscionable provisions may be severed from the agreement, and that the entire arbitration agreement is not "permeated by unconscionability." *Davis*, 485 F.3d at 1084 (quotation omitted). The three substantively unconscionable provisions, discussed above, are severed from the arbitration agreement pursuant to California Civil Code § 1670.5. The Court finds that, after the substantively unconscionable provisions are severed, the arbitration agreement is enforceable.

### G.    California Private Attorney General Act Claims

After the conclusion of briefing on the pending motions, each party filed a Notice of Statement of Recent Authority Relevant to Defendants' Motion for an Order Directing Arbitration. (ECF Nos. 52, 54).

Plaintiff attached to his Notice *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 2011 WL 2685959 (2011). In *Brown*, a divided panel of the California Court of Appeal held that a contractual waiver of an employee's right to pursue a representative action under the Private Attorney General Act, located in an arbitration agreement, was unenforceable under California law. The court stated that "representative actions under the [Private Attorney General Act, Cal. Labor Code §§ 2698, *et seq.*] do not conflict with the purposes of the FAA. If the FAA preempted state law as to the unenforceability of the PAGA representative action waivers, the benefits of private attorney general actions to enforce state labor laws would, in large part, be nullified." 2011 WL 2685959, at *6. The court stated that:

> United States Supreme Court authority [including *Concepcion*] does not address
> a statute such as the PAGA, which is a mechanism by which the state itself can

enforce state labor laws, for the employee suing under the PAGA does so as the proxy or agent of the state's labor law enforcement agencies. And, even if a PAGA claim is subject to arbitration, it would not have the attributes of a class action that the [*Concepcion*] case said conflicted with arbitration, such as class certification, notices, and opt-outs. Until the United States Supreme Court rules otherwise, we continue to follow what we believe to be California law.

*Id*. at *7.

Defendants attached to their Notice *Quevedo v. Macy's, Inc.*, --- F. Supp. 2d ---, No. CV 09-1522, 2011 WL 3135052 (C.D. Cal. June 16, 2011). In *Quevedo*, the court held that *Concepcion* compelled enforcement of arbitration agreements even where the agreements barred an employee from bringing a representative Private Attorney General Act claim. The court stated:

[R]equiring arbitration agreements to allow for representative PAGA claims on behalf of other employees would be inconsistent with the FAA. A claim brought on behalf of others would, like class claims, make for a slower, more costly process. In addition, representative PAGA claims 'increase[] risks to defendants' by aggregating the claims of many employees. *See* [*Concepcion*, 131 S. Ct.] at 1752. Defendants would run the risk that an erroneous decision on a PAGA claim on behalf of many employees would 'go uncorrected' given the 'absence of multilayered review.' *See id*. Just as '[a]rbitration is poorly suited to the higher stakes of class litigation,' it is also poorly suited to the higher stakes of a collective PAGA action. *See id*. The California Court of Appeal's decision in *Franco* [which was relied on by *Brown*, 2011 WL 2685959, at *4-*5] shows only that a state might reasonably wish to require arbitration agreements to allow for collective PAGA actions. *See Franco* [*v. Athens Disposal Co.*, 171 Cal. App. 4th 1277 (2009)]. *AT&T v. Concepcion* makes clear, however, that the state cannot impose such a requirement because it would be inconsistent with the FAA. *See Concepcion*, 131 S. Ct. at 1753.

For these reasons, the Court concludes that Quevedo's PAGA claim is arbitrable, and that the arbitration agreement's provision barring him from bringing that claim on behalf of other employees is enforceable.

*Id*. at *17.

Plaintiff's Third Amended Complaint alleges a representative action pursuant to the California Private Attorney General Act. To the extent Plaintiff has raised the arguments made by the California Court of Appeal in *Brown*, the Court finds the reasoning of *Quevado* to be more persuasive. *See Nelson v. AT&T Mobility, LLC*, No. C10-4802, 2011 WL 3651153, at *4 (N.D. Cal. Aug. 18, 2011) (same). The United States Supreme Court has stated that a state "cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons," *Concepcion*, 131 S. Ct. at 1753, nor can a state "prohibit[] outright the

1    arbitration of a particular type of claim," *id*. at 1747.  Court finds that Plaintiff's California

2    Private Attorney General Act claim is arbitrable, and that the arbitration agreement's provision

3    barring him from bringing that claim on behalf of other employees is enforceable.

4         The  Motion for an Order Directing Arbitration is granted, as discussed above.

5         **H.    Motion for Discovery and Jury Trial**

6         When Plaintiff filed his opposition to the Motion for an Order Directing Arbitration,

7    Plaintiff also filed the Motion for Discovery and Jury Trial.  (ECF No. 43-1).  Plaintiff

8    contends: "Plaintiff should be able to discover the Defendant's processes and procedures for

9    presenting the [Bonus Incentive Agreement]s to all of the putative class members, including

10   whether anyone [was] able to negotiate the terms of the dispute resolution provision, whether

11   anyone attempted to refuse signing the agreement along with corresponding repercussions, and

12   the extent to which anyone suffered the forfeiture of bonus wages due to their refusal to sign

13   the BIA."  (ECF No. 47 at 5).

14        Pursuant to California law, "[t]o determine whether [an] arbitration agreement is

15   procedurally unconscionable the court must examine the manner in which the contract was

16   negotiated and the circumstances of the parties at that time."  *Ingle*, 328 F.3d at 1171

17   (quotation omitted).  On June 2, 2011, the Court granted Plaintiff an extension of time to

18   oppose the Motion for an Order Directing Arbitration to allow Plaintiff "to conduct limited

19   discovery as to the facts concerning the negotiation of the arbitration contract and the

20   circumstances of the parties at the time the contract was signed." (ECF No. 37 at 2).  Plaintiff

21   has not shown that Defendants failed to adequately respond to Plaintiff's discovery requests

22   regarding "the manner in which the contract was negotiated and the circumstances of the

23   parties at that time."  *Ingle*, 328 F.3d at 1171.  The parties filed excerpts from the depositions

24   of Cohen and Plaintiff, who each testified regarding the circumstances surrounding the signing

25   of the Bonus Incentive Agreements.  As discussed above, based upon the evidence submitted

26   by the parties (including the depositions of Cohen and Plaintiff, and Plaintiff's Declaration),

27   the Court has not found that there exists a genuine issue of material fact which would warrant

28   a trial regarding the enforceability of the arbitration agreements signed by Plaintiff.  To the

1  extent that Plaintiff requests discovery related to the execution of arbitration agreements by

2  *persons other than Plaintiff*, the Court finds that such discovery is not relevant to the issues

3  to be decided in the motion for an order directing *Plaintiff* to arbitration.  *Cf. Flores v.*

4  *Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 852 (2001) (holding that there is no

5  collateral estoppel regarding "virtually identical" arbitration agreements, because they "were

6  signed by different parties under different circumstances").

7          The Motion for Discovery and Jury Trial is denied.

8  **V.       Conclusion**

9          IT IS HEREBY ORDERED that the Motion for an Order Directing Arbitration is

10  GRANTED, as discussed above.  (ECF No. 34).  The Motion for Discovery and Jury Trial is

11  DENIED.  (ECF No. 43-1).

12          The Clerk of the Court shall administratively close this case without prejudice to any

13  party moving to have the case reopened for good cause.

14  DATED:  September 19, 2011

15

16                                                **WILLIAM Q. HAYES**
                                                  United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28